Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 571 | **DATE** | 9/12/2002 |
| **CASE TITLE** | Monee Nursery vs. Int'l Union of Engineer, Local 150 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Plaintiff's motion for summary judgment [17-1] and Defendant's motion for summary judgment [19-1]. Plaintiff's motion is denied. Defendant's motion is granted. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 17 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✔ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONEE NURSERY & )
LANDSCAPE COMPANY, )
)
Plaintiff, )
) No. 01 C 0571
v. )
) HONORABLE CHARLES R. NORGLE SR.
)
INTERNATIONAL UNION OF )
ENGINEERS, LOCAL 150 AFL-CIO )
and AMERICAN ARBITRATION )
ASSOCIATION, )
)
Defendants. )

## OPINION AND ORDER

**Charles R. Norgle, Sr., District Judge**

Before the court is Plaintiff's motion for summary judgment and Defendants' cross motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons Plaintiff's motion is denied and Defendant's motion is granted.

### I. BACKGROUND [1]

The relationship between Plaintiff, Monee Nursery & Landscaping Co. ("Monee"), and Defendant, International Union of Engineers, Local 150 ("Local 150"), starting in 1984, has been antagonistic. Monee is a landscaping company that grows, sells, and plants various landscaping items. Local 150 represents individuals who operate heavy equipment for construction and landscaping business in northern Illinois and Indiana and which are signatories to collective bargaining agreements with the Union.

---

[1] All facts are taken from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

In August of 1984, Monee employees were working on a job site in Matteson, Illinois when a Local 150 representative asked to see their union cards. When Monee's employees were unable to produce union cards the site was shut down for the day. The Local 150 representative went to Monee's nursery to speak with the owner in an attempt to get Monee to sign a Collective Bargaining Agreement ("CBA") with Local 150. A CBA was signed between the parties[2] and two of Monee's employees joined Local 150. The employees maintained their membership with Local 150 for one year, after which time their membership was revoked for lapsed dues.

The parties had no further dealings with each other for seven years. In April of 1992, at a job site in Merrivile Indiana, employees from Monee were approached by a Local 150 representative who requested to see their union cards. When none of Monee's employees could produce a union card, work was stopped at the site. Local 150 agreed to issue a temporary permit to one of Monee's employees. The dues were paid and work resumed.

In 1993, a Local 150 representative again went to a Monee work site and requested to see if Monee's employees had union cards. None were produced. Local 150 filed a grievance with Monee and attempted to arbitrate Local 150's claims pursuant to the CBA. Monee filed an action in the Illinois State court in an attempt to enjoin the arbitration, claiming that there was no CBA between the parties. It was determined that a CBA did exist between the parties. Monee appealed the decision, but it was affirmed by the Illinois Appellate court. After several years of litigating the question of the existence of a CBA, the matter was finally sent to an arbitrator. The arbitrator found

---

[2] Monee has previously litigated the issue of whether an enforceable CBA was signed between the parties in Illinois State court. The Illinois State court ruled that there was a CBA between the parties. The Illinois Appellate court affirmed that decision. See 1-97-2619.

that Monee did violate the CBA, and awarded Local 150 $133,168.00 for Monee's continuing violations.

Monee has now brought suit, attempting to vacate the arbitration award. Monee claims that the arbitrator abused his discretion by ruling against the manifest weight of the evidence. Their being no contested factual issues, both parties have filed motions for summary judgment. For the following reasons, Monee's motion for summary judgment is denied. Local 150's motion for summary judgment is granted.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events.") A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

3

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. Proviso Association of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996); Chicago Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Kelly, No. 95 C 501, 1996 WL 507258, *3 (N.D. Ill. Sept. 3, 1996). The traditional standards for summary judgment still apply even though both parties have moved for summary judgment. Blum v. Fisher and Fisher, Attorneys at Law, 961 F. Supp. 1218, 1222 (N.D. Ill.1997). The court considers each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties in favor of the non-moving party

In this instance the court, is asked to review an arbitrator's award and either, affirm, vacate, or remand it for modification. It is well settled that judicial review of arbitration awards is extremely limited. Advance Transp. Co. v. Int'l Bhd of Teamsters, Local No. 710, 973 F.2d 593, 596-597 (7th Cir. 1996) (citing Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 183 (7th Cir. 1985); United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29 (1987); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960)).

The Seventh Circuit has set forth the applicable standard of review for arbitration awards as follows:

> An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Anheuser-Bush, Inc. v. Local Union No. 744, 280 F.3d 1133, 1137 (7th Cir. 2002) (quoting Tootsie Roll Indus., Inc. v. Local Union #1, 832 F.2d 81, 83 (7th Cir. 1987)).

> The arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract . . . . It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to "draw its essence from the collective bargaining agreement.

4

Anheuser-Bush, Inc., 280 F.3d at 1137 (quoting Burkart Randall v. Lodge # 1076, 648 F.2d 462, 465 (7th Cir. 1981) and Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 184-85 (7th Cir. 1985)). "[T]he fact that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quoting Eastern Assoc. Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000)) (internal quotations omitted). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and is acting within the scope of his authority' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Assoc. Coal Corp., 531 U.S. at 62 (2000) (quoting Paperworkers, 484 U.S. at 38); see also Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960). With these principles in mind, the court now turns to the parties' arguments in reviewing the arbitrator's decision.

## B. Reviewing the Arbitrator's Ruling

Monee challenges the arbitrator's ruling on several grounds: 1) that the arbitrator exceeded his power by not limiting the Arbitration Proceedings to the single grievance which was filed on November 13, 1993; 2) that the arbitrator exceeded his authority by considering matters after December 1, 1996 the date Monee allegedly cancelled the CBA; and 3) that the arbitrator's award of $133,168.00 was excessive based on the CBA and the evidence presented. (See Pl.'s Mot. for Summ .J. pg. 2.) Monee previously presented these arguments to the arbitrator, who rejected them. The court finds none of Monee's arguments persuasive, and discussing each.

First, Monee argues that based on the CBA the arbitrator exceeded his authority by viewing Local 150's grievance as a continuing violation spanning the years 1994 through 2000, as opposed to a grievance for a single complaint on a single instance. (See Pl.'s Mot. for Summ. J. pg. 7.) The

5

arbitrator found that the grievance was a continuing violation. In making that determination, the arbitrator reviewed both parties' arguments and found Local 150's more persuasive. Monee contended, just as they have here, that the express language of the agreement requires notice within two weeks of the alleged violation. Since Monee received no notice of their continuing violations, it argues that they should not be held accountable under the CBA. The arbitrator found in favor of Local 150 on the issue of a continuing violation for two reasons:

> First, [Monee] ignore[s] that the fundamental basis for the continuing violation is that because the conduct complained of has continued once the grievance was filed no additional action or notice was required of the Union. Secondly, I find that equity and fairness have been met by virtue of the language of the Union's grievance, the prior history set forth in the opinion of the appellate court that the Union and the Employer at one time disputed the use of non-bargaining unit personnel in the past, the Employer at one time complied with the Union's demands that bargaining Unit employees be used, and the repeat references to these demands in the appellate court. Simply put, given the history of the dispute up to October 1998, the date of the appellate court's opinion, it strains credulity to believe that the Employer was not on notice that the Union continued to demand the use of bargaining unit personnel to perform bargaining unit work.

(See Def.'s Ex. G pg. 10.)

Monee's assertion that the arbitrator exceeded his authority are meritless. In making his decision the arbitrator reviewed the CBA, the particular grievance that was filed, and the Illinois Appellate Court's decision. Although it may appear that the arbitrator has exceeded his power by going outside the CBA in making his determination by drawing inferences from the Illinois Appellate Court's decision, he has not. An arbitrator may look for guidance from outside sources as long as his determination is based on the essence of the CBA. Anheuser-Bush Inc., 280 F.3d at 1137. After reviewing the grievance that Local 150 filed and the CBA, the arbitrator determined that Monee was on notice of a continuing violation, the failure to use union members on Monee's various job sites. The arbitrator's determination is based on the essence of the CBA, and therefore will not be disturbed.

Second, Monee asserts that the arbitrator exceeded his authority by not finding Monee's attempted cancellation of the CBA, sixty days prior to the expiration date of the term in 1998, as

6

effective, thus limiting Monee's liability to Local 150. Again, the arbitrator was presented with this assertion and ruled in favor of Local 150. The arbitrator reviewed the language of the CBA, specifically two different clauses of the CBA pertaining to cancellation. One section was in the Master Agreement, the other in the Memorandum Agreement. The two sections state respectively:

> This agreement shall...continue in full force and effect from year-to-year unless either party hereto shall notify the other party at least sixty (60) days prior to the expiration date of the term or any extended term of this Agreement of an intention to...terminate this Agreement...

> and

> Either part desiring to...terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein...

(Def.'s Ex. G pg. 3)

Upon reviewing the two agreements the arbitrator determined that Monee had not effectively cancelled the CBA, within the allotted time period. The arbitrator found that there was no ambiguity in the two clauses:

> [T]he Memorandum of Agreement incorporated by reference the terms of the Master Agreement ("...the parties do hereby mutually agree to be bound by the terms and conditions of the Master Agreement...as though...incorporated herein") but clearly and unequivocally created a different, mutually agreed to, termination provision. Moreover, since the parties in the Memorandum of Agreement explicitly created a separate expiration time line, I also disagree with the Employer's assertion that the Master Agreement must govern because the Memorandum of Agreement did just that by its clear and unequivocal terms set forth in paragraph 5 ("Either party desiring to...terminate this Memorandum...must notify the other...at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein.") Thus, I find that the Employer's attempt to terminate its contractual obligations set forth in the Memorandum of agreement and by incorporation the Master Agreement were not valid.

(See Def.'s Ex. G pg.10).

Again, Monee's argument that the arbitrator exceeded the scope of the CBA is meritless. "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and is acting within the scope of his authority' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Assoc. Coal Corp., 531 U.S. at 62 (quoting

7

Paperworkers, 484 U.S. at 38); see also Enterprise Wheel & Car Corp., 363 U.S. at 596. The arbitrator reviewed the Master Agreement and the Memorandum of Agreement and construed them accordingly. The court will not overturn the arbitrator's decision on this basis.

Finally, Monee argues that the arbitrator's award of $133,168.00 was excessive based on the evidence presented during the arbitration. Again, the arbitrator reviewed all of the evidence before him and made a determination as to what a proper award would be for the grievance. The arguments that Monee are now asserting are the same as those made before the arbitrator in the post-hearing briefs, which the arbitrator took into consideration before assigning the award. The arbitrator reasoned that:

> "[i]n Article 6 of their agreement the parties have agreed that landscaping equipment operators, defined as those who operate the work in question are to receive a specific hourly rate. More importantly, it does not restrict that hourly rate only to those rare periods during which they are working in that fashion."

(Def.'s Ex. G pg. 13)

"Awards will be vacated only where there is no logical interpretive route between the collective bargaining agreements and the awards." Advance Trans. Co. v. Local No. 710, 946 F.Supp. 580, 581 (N.D. Ill. 1996) (citing Arch of Ill., Div. of Apogee Coal Corp. v. District 12, United Mine Workers of Am., 85 F.3d 1289, 1293-94 (7th Cir. 1996)). "Courts must resolve disputes in favor of enforcement where there exists any reasonable amount of doubt regarding whether the award contains such a logical connection." Advance Trans. Co., 946 F.Supp. at 581 (citing Jasper, 77 F.3d at 1028-29). The arbitrator determined the damages by finding that during the seasonal work periods, the failure to employ a union worker represented a lost work opportunity. The amount of $133,168.00 represents the lost work opportunity. The court finds that the award contains a logical connection to the CBA and therefore will not disturb it. The arbitrator's ruling stands.

## III. CONCLUSION

For the foregoing reasons Monee's motion for summary judgment is denied. Local 150's cross motion for summary judgment seeking the affirmance of the arbitrator's award is granted.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR., District Judge

DATED: 9-12-02